# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN D. SAVEDRA,

      Plaintiff,

vs.                                                                          Civ. No. 01-0295 JP/WWD

JO ANNE B. BARNHART[1],
Commissioner of Social Security,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

1.   This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing ("Motion") **[Doc. 9]**, filed November 5, 2001.  Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income benefits ("SSI").  Plaintiff, currently age 24, alleges a disability which commenced September 1, 1994 due to epilepsy. At the time of the Administrative Law Judge's ("ALJ's") decision, Plaintiff was 20 years old, had completed twelfth grade and had worked for approximately two years as a grocery store courtesy clerk/sacker. Tr. at 89, 93.

2.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the

---

[1]        Jo Anne B. Barnhart was appointed Commissioner of Social Security, effective November 9, 2001.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Jo Anne B. Barnhart should be substituted for Acting Commissioner Larry G. Massanari as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

3. Plaintiff raises the following allegations of error with respect to the ALJ's decision: 1) the ALJ's finding that Plaintiff's seizures are well controlled is not supported by substantial evidence, 2) the ALJ's failure to offer a reasonable explanation for disregarding a treating physician's opinion was contrary to law, and 3) the ALJ improperly relied on Plaintiff's ability to work in the past to find that Plaintiff was not disabled.

4. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. § 423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

5. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

6. Here, the ALJ determined at step four that Plaintiff was not disabled because he could perform his past relevant work as a supermarket courtesy clerk or grocery bagger. Tr. at 19. The Appeals Council denied Plaintiff's request for a review of the ALJ's decision. Tr. at 4-6. Thus, the Commissioner's decision became final.

7. Plaintiff, John Savedra, was born on September 1, 1977. Tr. at 86. Mr. Savedra suffers from a seizure disorder that apparently began in 1985[2] and has been treated with medication since he was in fourth grade. Tr. at 89, 264. Plaintiff worked as a courtesy clerk/sacker at Furr's supermarket from August of 1994 through August of 1996.[3] Tr. at 93.

###    I.    Whether the ALJ's finding that Plaintiff's seizures are well controlled is supported by substantial evidence

8. At Steps Three and Four, the focal concern is not merely the existence of a seizure disorder, but whether the seizures occur at a disabling frequency. SSR 87-6; see also, CFR §§ 404.1520(a-f); 416.920. Epilepsy that is truly controlled would not preclude work. See Pacheco v. Sullivan, 931 F. 2d 695, 698 (10th Cir. 1991) (an impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability). In reaching a conclusion that Plaintiff is not disabled, the ALJ found that Plaintiff "has a history of epileptic seizures that for the most part have been well controlled by medication." Tr. at 13. However, I need not address the ALJ's finding that Plaintiff's seizures are well controlled, because I find the ALJ's credibility

---

[2]    Dr. Vigil indicated that a 1985 EEG demonstrated "bursts of generalized epileptiform discharges . . . ." Tr. at 149.

[3]    Plaintiff has indicated variously that he quit his job as a courtesy clerk because he was "denied leave for [a] doctor's appointment," tr. at 89, or because "too much stress at work [was] causing seizures," tr. at 102. At his hearing, Plaintiff stated that he left work "[b]ecause of the boss and because of my seizures." Tr. at 30. The ALJ found that Plaintiff quit his job "because his employer denied him leave." Tr. at 18.

determination with regard to the Plaintiff's seizure log to be flawed.

9.     In reviewing the Plaintiff's history of seizures, the ALJ acknowledged the seizure log maintained by the Plaintiff's mother and presented at the hearing. Tr. at 16. However, the ALJ gave "little or no weight [to the log] in establishing [Mr. Savedra's] symptoms," based on "inconsistencies and discrepancies of the log, the medical evidence . . . , the claimant's statements in the record, and the general lack of medical documentation to support these alleged events." Tr. at 17.

10.     The ALJ listed the following as examples of inconsistent entries contained in the log: (1) an entry indicating a seizure on October 26, 1996 for which "no medical documentation in the file [exists]," (2) an entry indicating that the Plaintiff visited Dr. Seelinger on November 4, 1996, (3) entries reflecting "additional seizures on multiple occasions throughout 1997 . . . [for which] no medical documentation [exists]," and (4) entries indicating that the Plaintiff "had at least five seizures during the period January through June 16, 1997," when the Plaintiff reported to a Disability Examiner on June 16, 1997 that he "had not had a seizure since January 1997." Tr. at 16, 17. The ALJ also explained that "a treatment note from Dr. Seelinger, dated January 31, 1997, casts further doubt about the frequency of occurrence and the severity of the claimant's seizure disorder," because "[t]he note indicate[d] that the claimant was doing well at the time 'as far as seizures are concerned,' and reported that he had 'one minor event,' apparently since [Mr. Savedra's] last visit on October 28, 1996." Tr. at 17.

11.     I agree with the ALJ that the entries indicating that Plaintiff had five seizures from January 1997 through June 16, 1997 are inconsistent with Plaintiff's report to a Disability Examiner regarding the same time frame. However, the ALJ incorrectly characterized the

4

remaining entries as "inconsistent."[4]  For example, the ALJ considered the entries indicating a seizure on October 26, 1996, a doctor's appointment on November 4, 1996, and the occurrence of multiple seizures in 1997 to be "inconsistent" because there is "no medical documentation" of these events. Tr. at 16.   However, a lack of medical documentation does not indicate an inconsistency.  See e.g., Taylor v. Chater,  118 F.3d 1274, 1278 (8th Cir. 1998) (finding that a lack of information contained in physician reports does not qualify as an inconsistency).  In addition, the seizure log is not at all inconsistent with Dr. Seelinger's treatment note of January 31, 1997.  Indeed, both Dr. Seelinger's note and Plaintiff's log apparently agree that Plaintiff had only one seizure event between October 28, 1996 and January 31, 1997.

12.     The ALJ discounted the credibility of the Plaintiff's seizure log, in part, due to the alleged inconsistencies he found among the log entries.  The Court has no way of knowing the extent to which the ALJ discounted the log entries or other testimony on this basis.  Accordingly, because the ALJ's credibility determination rested on a flawed basis, I recommend that this matter be remanded for a redetermination of credibility with respect to Plaintiff's seizure log.

13.     Plaintiff also contends that the ALJ failed to discuss the side effects of the seizure medications prescribed for Mr. Savedra.  See Pl.'s Mem. [Doc. 10] at 4. There is some evidence that Plaintiff reported negative side effects related to his medication.  Tr. at 195, 267.  "The ALJ must investigate all avenues presented that relate to subjective complaints, including . . . adverse side effects of medications."  SSR-88-13; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987).  Therefore, I recommended that on remand, the Commissioner should investigate

---

[4]      An inconsistency is that which is "incompatible, incongruous, [or] inharmonious." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1144 (1993).

Plaintiff's reports of adverse side effects and consider the impact they may have on his functional abilities.

**II.    *Whether the ALJ improperly disregarded the opinion of a treating physician***

14.     In a letter dated February 19, 1997 and addressed to the ERISA Administration Office, Dr. Seelinger stated that "[Plaintiff] has a seizure disorder, is followed here and is on medication.  He has been compliant and has good blood levels.  Nonetheless, he continues to have seizures.  He is not able to drive and this is severely limiting, particularly in the area in which he lives.  I do not think, without having more control of his seizures, that it would be possible for him to be employable, and, in that sense, he is limited and handicapped and . . . [he should] be continued under his father's insurance program." Tr. at 194.  Plaintiff points out that the ALJ neglected to discuss Dr. Seelinger's letter in his decision.

15.     A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.3d 508, 513 (10th  Cir. 1987)). Furthermore, "[i]f the opinion of the claimant's physician is to be disregarded, specific, legitimate reasons for this action must be set forth." Frey v. Bowen, 816 F.3d 508, 513 (10th  Cir. 1987) (citation omitted).

16.     Because the ALJ failed to address Dr. Seelinger's letter of February 19, 1997, the Court has no way of knowing what weight, if any, the ALJ afforded the opinion contained therein. Indeed, it is unknown whether the ALJ considered Dr. Seelinger's letter at all.  The ALJ's failure to address Dr. Seelinger's opinion is contrary to law.  Thus, this matter should be remanded with instructions that the Commissioner consider and address Dr. Seelinger's opinion.  The Commissioner should reassess the conclusions regarding Plaintiff's condition in light of any

additional or changed findings following consideration of Dr. Seelinger's opinion.

**III. Whether the ALJ improperly relied on Plaintiff's past work in determining that Plaintiff is not disabled**

17.     The ALJ noted that "despite his condition, [Plaintiff] was able to obtain employment as a supermarket courtesy clerk . . . . and his condition did not cause him to change jobs or his job duties, the hours that he worked, or interfere with his attendance." Tr. at 18. Plaintiff contends that the ALJ improperly considered Mr. Savedra's employment in reaching his decision to deny benefits. Defendant argues that efforts to work can be considered by the ALJ in determining Plaintiff's ability to do work related activities.

18.     I find that the ALJ properly considered Plaintiff's prior work history as one factor in his decision making process. See 20 CFR § 416.929(c)(3); see also, Roberts v. Apfel, 222 F.3d 466, 468-69 (8th Cir. 2000) (finding that the ALJ properly considered Plaintiff's work history as relevant evidence). I find the cases cited by Plaintiff to be inapposite. Accordingly, the ALJ did not err when he considered Plaintiff's past work history as one factor in the overall assessment of Plaintiff's abilities.

**Recommended Disposition**

19.     Based on the foregoing, I recommend that Plaintiff's Motion be GRANTED IN PART and that this matter be reversed and remanded to the Commissioner for additional proceedings consistent with this opinion to include: (1) a credibility determination taking into consideration the principles discussed in this opinion, (2) an investigation of the reported side effects of Plaintiff's medications and their impact on Plaintiff's ability to function, (3)

consideration of Dr. Seelinger's opinion expressed in his letter of February 19, 1997, and (4) a reassessment of conclusions regarding Plaintiff's condition in light of any additional or changed findings resulting from the above proceedings.

Timely objections to the foregoing proposed findings and recommended disposition may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE